UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EDWARD W. VANCE                                                                             PLAINTIFF

vs.                                                                    CIVIL ACTION NO.  3:21-CV-730-CRS

CHRISTINE WORMUTH, et al.                                                               DEFENDANTS

## MEMORANDUM OPINION

Edward W. Vance is a Captain in the United States Army.  He was assigned to the Arctic Support Command (Provisional) in Fort Wainwright, Alaska, until August 15, 2021 when he was transferred to Fort Gordon, Georgia, to attend the Signal Captains Career Course, a required course for advancement of his military career.  He graduated from the course on February 4, 2022 and presently remains at Fort Gordon.[1]

On December 15, 2020 while still in Alaska, Vance requested a "religious accommodation for a waiver of Army Regulation 40-562, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, regarding an exemption from all future immunizations." 12/15/2020 Mem., DN 1-1, PageID #19-21.[2]  A May 2021 initial denial of his

---

[1] The action was filed here pursuant to 28. U.S.C. § 1391(e)(1)(c) which permits filing of suit where the plaintiff resides if no real property is involved in the action and the defendants are "officer[s] or employee[s] of the United States or an agency thereof acting in [their] official capacit[ies] or under color of legal authority, or an agency of the United States, or the United States."  The Complaint alleges that Louisville, Kentucky, is  the place of Vance's permanent address, legal residence and domicile.

[2] In paragraph 2 of the memorandum he submitted to his Commander, Vance states that he "request[s] a religious accommodation to immunizations and vaccines…"  There is a distinction between "vaccination" and "immunization."  The CDC defines "vaccination" as "The act of introducing a vaccine into the body to produce protection from a specific disease."  It defines "immunization" as "A process by which a person becomes protected against a disease through vaccination.  This term is often used interchangeably with vaccination or inoculation."  https://www.cdc.gov/vaccines/vac-gen/imz-basics.htm.  Both terms have been used in the briefing For simplicity's sake, we will use the terms "vaccine" and "vaccination" in this opinion with the understanding that we are referring the vaccines required by the Department of Defense

request by the Army prompted this lawsuit against Secretary of the Army Christine Wormuth; the Surgeon General of the Army, Lt. General R. Scott Dingle; Sr. Official Mark R. Lewis, Asst. Secretary of the Army for Manpower and Reserve Affairs; and the United States of America (collectively "the Army" herein).[3] Although his appeal of the initial denial remains pending, Vance filed suit seeking declaratory judgment and injunctive relief on his claims for violations of the Religious Freedom and Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4, and his First Amendment right to free exercise of religion under the United States Constitution.

Shortly thereafter, Vance filed an Emergency Motion for Preliminary Injunction.[4] He contends that he need not delay in seeking relief from the Court until the Army's review process is complete because it is a foregone conclusion that the Army will deny his appeal and will immediately begin separation proceedings against him for his refusal to receive the COVID-19 vaccine. The Army responded to the motion for preliminary injunction objecting both procedurally and on the merits. Shortly after briefing was completed on the injunction motion, the Army filed a motion to dismiss the case for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), citing a number of developments that impact Vance's claims. The dismissal motion has been fully briefed[5] and is now submitted to the Court for decision.

---

("DoD") policies on Military Vaccinations and the DoD Immunization Program which coordinates the administration of vaccines to servicemembers.

[3] Vance named the individual defendants in their official and individual capacities but voluntarily withdrew the individual capacity claims without prejudice.

[4] The motion for preliminary injunction remains pending. At the outset of that motion, a footnote states: "At present, the plaintiff is set to soon begin a winter leave period, and, while his rights continue to be violated, the situation has not escalated to the point that would necessitate a temporary restraining order. Plaintiff reserves the right to seek that relief, however, should the situation warrant it. He does, however, request emergency relief on this motion and expedited briefing." There has been no indication from any party that any "escalation" has occurred warranting immediate injunctive relief, although Vance insists that his situation is emergent and that his religious freedoms are presently substantially burdened. The motion for preliminary injunction has been fully briefed but its merits will not be addressed in this opinion as the Court finds as a threshold matter that subject matter jurisdiction is lacking.

[5] This is a dynamic area of the law. There have been similar suits filed across the country by members of branches of the service who challenge, statutorily under RFRA and constitutionally under the Free Exercise Clause of the First Amendment, various vaccination protocols. Many of these cases have arisen

For the reasons articulated below, the Court finds on the present record that Vance's claims are not ripe. The Court therefore lacks subject matter jurisdiction and the case will be dismissed without prejudice in accordance with Fed.R.Civ.P. 12(h)(3).

A. Legal Framework

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal of a complaint when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The court lacks subject-matter jurisdiction if the action is not ripe for review." *4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 815 (E.D. Ky. 2019) quoting *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992). A party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the competence of that court. *See Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 508–09 (6th Cir. 2006) (Powell, J., dissenting) (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3522, at 45 (1975)). "A court considers 12(b)(1) arguments before any additional 12(b) motions because any remaining arguments would be moot if subject-matter jurisdiction is lacking. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)." *4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 815–16 (E.D. Ky. 2019).

A Motion to dismiss for lack of subject matter jurisdiction is posed either as a "facial attack" which questions the sufficiency of the pleadings or a "factual attack" which challenges the factual existence of subject matter jurisdiction. *See United States v. Ritchie*, 15 F.3d 592,

---

since the August 2021 mandate by the Secretary of Defense that all active duty servicemembers be vaccinated against the SARSCoV-2 virus. Vance's request for religious accommodation to decline all future immunizations and vaccines was made before the COVID-19 vaccine mandate issued. This is of no moment as the foundation of his claims remains the same with the addition of the COVID-19 vaccine to the list. The decisions in these cases turn on individual facts and the cases vary widely in their outcomes. The parties have kept the Court apprised of these decision through notices of supplemental authority. However, these other decisions are of limited value in our analysis as Vance faces unique circumstances which requires an individualized analysis.

598 (6th Cir. 1994). In addressing a factual challenge such as the one we have here, the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and to consider evidence outside the pleadings *Ritchie*, 15 F.3d at 598; *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

The United States Court of Appeals for the Sixth Circuit applied the framework established in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) in addressing the justiciability of claims involving internal military decisions. *Harkness v. Sec'y of the Navy*, 858 F.3d 437, 444 (6th Cir. 2017).[6]

Under *Mindes*' multi-step inquiry, the case must meet the initial requirements for justiciability that (1) there is an allegation of the deprivation of a constitutional right or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (2) there has been exhaustion of available intraservice corrective measures. In addition to these threshold requirements of *Mindes*, the Court must find that the dual prerequisites of standing and ripeness are met. As noted in *Robert v. Austin*, No. 21-cv-02228-RM-STV, 2022 WL 103374 (D.Colo. Jan. 11, 2022),

> "The doctrines of standing and ripeness substantially overlap in many cases." *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1157, (10th Cir. 2013). To satisfy Article III's standing requirements, a plaintiff must show: (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 1153. In evaluating ripeness, often characterized as standing on a timeline, "the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 1158 (quotation omitted).

---

[6] The Sixth Circuit employed the *Mindes* test in the Harkness case but stopped short of explicitly endorsing it in this Circuit, although it noted that other circuits have done so.

Ripeness is a justiciability doctrine designed "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (internal quotation omitted). The doctrine is drawn "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (internal citation and quotation omitted)." Ripeness "becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 294 (6th Cir. 1997).

The United States Court of Appeals for the Sixth Circuit has indicated that "[r]ipeness requires that the 'injury in fact be certainly impending.' *National Treasury Employees Union v. United States,* 101 F.3d 1423, 1427 (D.C.Cir.1996). Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977)." *Magaw*, 132 F.3d at 280.

The Court considers three factors in the ripeness inquiry: (1) the likelihood that the harm alleged by the plaintiff will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings. *Ky. Press Ass'n,* 454 F.3d at 509.[7]

---

[7] The *Mindes* test involves the two initial factors mentioned above and four additional factors to be considered before a claim will be found justiciable in the context of a challenge to a particular military decision. The parties discuss these factors extensively. The Court will not address the arguments made with respect to the *Mindes* factors, however, as we find, at a more basic level, that subject matter

B. Analysis

The facts upon which this analysis rests are undisputed.[8]

Vance voluntarily received immunizations and vaccines in prior years as the Army required routinely or for specific deployment. Vance sought the exemption from immunizations after embracing a religious conviction which is antithetical to vaccination. This belief began to take shape in January 2017 when Vance became a Christian and culminated in his decision in 2019 to decline further vaccinations. In his request he explained the catalysts for his beliefs and concluded "[I]t became clear that I cannot practice my religion according to my convictions while still receiving immunizations and vaccines researched, produced, and containing the ingredients which I stated above for the reason in the Bible referenced above."

Army Regulation ("AR") 40-562, Appx. D, Table D-1 lists vaccinations required for military personnel, either routinely or in the event of elevated risk factors. Vance seeks exemption from all future vaccinations required pursuant to AR 40-562. He also seeks exemption from vaccination with the COVID-19 vaccine. The COVID-19 vaccine was not required for military personnel at the time of his initial exemption request but has since been mandated for active duty service members. 2021 records reflect Vance was due for a number of vaccines including the COVID-19 vaccine. He declined them.

It is undisputed that Vance followed the procedures set forth in the applicable policy for religious accommodation, AR 600-20. Through this protocol, Vance's religious conviction was found by a chaplain to be sincere and recommendation was made through his chain of command

---

jurisdiction is lacking; that is, that the claims are not justiciable as they are not ripe. *See Robert, supra.,* citing *Church v. Biden*, 2021 WL 5179215 at *10 (D.D.C. Nov. 8, 2021) and similarly finding claims not ripe for adjudication.

[8] The facts are taken from the Complaint and its attachments(DN 1)and the sworn affidavits of Capt. Edward W. Vance (DN 30-2); Col. Thomas H. Manion, Deputy Director of Military Personnel Policy within the office of the Deputy Assistant Secretary of the Army for Military Personnel (DNs 28-1, 32-2); and Capt. Jeremy Miller, Commander of Headquarters and Alpha Company, 442nd Signal Battalion, 15th Signal Brigade at Fort Gordon, Georgia (DNs 14-14, 28-9).

that his request be approved. However, the Army Surgeon General initially denied the request in May 2021. On May 29, 2021, Vance appealed the decision. The request was returned for review through his new chain of command in Georgia. As of the end of March 2022, no decision had been made in his appeal by the Assistant Secretary of the Army for Manpower and Reserve Affairs ("ASA M&RA").[9]

In August of 2021, Vance began the Signal Captains Career Course at Fort Gordon. In that same month, the Secretary of Defense directed the Departments to begin programs to vaccinate all members of the armed forces against COVID-19. In compliance with this directive, the Army issued implementing guidance, FRAGO 5 to HQDA Exord 225-21 COVID-19 Steady State Operations, which directed that active-duty service members be fully vaccinated against COVD-19 by December 15, 2021. As with other vaccination requirements, an avenue for soldiers to object and seek religious accommodation was included in its provisions. FRAGO 5 ¶ 3.D.8.B.1.D provides that "Commanders will request a General Officer Memorandum of Reprimand (GOMOR) be initiated for all soldiers refusing the vaccine." However, FRAGO 5 ¶ 3.D.8.B.1.F also states that "Commanders will not take adverse action against soldiers with pending exemption requests."

Vance declined the COVID-19 vaccine in September of 2021 and was counseled, per FRAGO 5, concerning the risks of severe illness and death from COVID-19 and the licensure and efficacy of the vaccine. Vance was further informed:

> Soldiers with active pending immunization exemption requests will not be immunized or subject to adverse action for refusal to receive the vaccine, pending

---

[9] Vance indicates in his March 7, 2022 Affidavit that his appeal has been pending "for many months beyond what Department of Defense Instruction 1300.17 requires." While there is a timeline for action on requests for religious accommodation in 1300.17 (Table 1 Review and Action Timeline for Processing Accommodation Requests (sec. 3.2.c)), the administrative appeal process for denied requests is addressed separately (sec. 3.2.f) and does not appear to place any time constraint on the reviewing authority.

> the outcome of their request or any appeal of a denied request. If you continue to refuse to be immunized after final denial of your exemption request appeal, you will be in violation of my order in paragraph 4 above. You are further advised [sic] IAW AR 600-20, Appendix P-2b(4) that noncompliance with immunization requirements may adversely impact deployability, assignment, or international travel and that exemptions may be revoked under imminent risk conditions.
>
> I am counseling you for the conduct noted above [On 28 September 2021, you declined to receive the COVID-19 vaccine.]. Be advised that continued conduct of this nature may result in administrative action to include your separation from the service, and or punitive action under the UCMJ.

Developmental Counseling Form, Sept. 28, 2021, DN 1-12, PageID # 35.

In the meantime, a parallel evaluation process has been commenced, unrelated to Vance's request for religious accommodation. In January 2022, Vance was referred to the Integrated Disability Evaluation System ("IDES") in order to determine whether he remains fit for continued military service in light of certain medical conditions which he indicates resulted from injuries he received in the line of duty. Pursuant to the army regulation, Disability Evaluation for Retention, Retirement, or Separation, AR 635-40, 3-4.f, while undergoing the IDES process, Vance is "ineligible for permanent change of station" ("PCS"). Thus, although he has already graduated from the Signal Captain's Career Course, his IDES evaluation prevents him from making a permanent change of station, a move that ordinarily takes place immediately after graduation.

Army Directive ("AD") 2022-02 Personnel Actions for Active Duty Soldiers who Refuse the COVID-19 Vaccination Order and Accession Requirements for Unvaccinated Individuals, issued in January of this year, which "establishes personnel policies and procedures for…Soldiers who refuse the novel Coronavirus 2019 (COVID-19) vaccination order," states that "[o]fficers…currently being processed through the Medical Evaluation Board/Physical Evaluation Board system pursuant to AR 635-40 will be processed in accordance with current

policy and regulations" and, similarly to AR 635-40, provides that "[u]nvaccinated Soldiers who are pending a medical or administrative exemption (to include religious accommodation) will not PCS. Exceptions may only be approved by the Under Secretary of the Army." Unlike the preclusion of PCS under the IDES regulation, there is apparently at least the possibility of an exception to the PCS restriction for Soldiers with pending COVID-19 exemption requests.

Vance contends that the exercise of his religious belief is substantially burdened because the Army has "put [his] career on hold, thereby causing him harm and keeping him from engaging in a Permanent Change of Station." Opp. To Mo. to Dis., DN 30, p. 2, PageID # 1640. However, the PCS prohibition is simultaneously attributable to his IDES evaluation and the exemption request appeal so Vance is unable to establish that the exercise of his religious beliefs is causing injury to his career. Absent the appeal, no PCS is possible until the IDES process concludes favorably to Vance. There is no way to know whether that eventuality will ever occur.

Vance urges that he faces "actual or imminent" injury because "the injury is certainly impending," and that is enough. DN 30, p. 3, PageID # 1641, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1970) and *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). He states that, "given the Defendants' failure to grant a single exemption to date, it is a certainty that Plaintiff's appeal will be denied, and equally certain that harm will immediately come to him when he refuses to be vaccinated notwithstanding that appeal denial." *Id.* The Army has, however, granted a number of religious exemption approvals from COVID-19 vaccination in the past month.[10] It is unknown whether Vance's request for exemption from all future vaccinations will be approved. However, in light of the COVID-19 vaccination

---

[10] While no documentation has been provided concerning the details, the sworn Second Supplemental Declaration of Thomas Manion (DN 32-2) avers that religious exemption approvals from COVID-19 vaccination were issued on March 2, 2022 and March 14, 2022 by the Surgeon General of the Army.

exemptions which have been granted, the basis for Vance's purported certainty in the outcome of his case is no longer valid.

>Additionally, AD 2022-02 defines at 4.a.2, "Soldier refusing the vaccination order" as
>
>A Soldier in the Regular Army…who meets all of the following:
>
>(a) Has received a lawful order to be fully vaccinated against COVID-19
>
>(b) Has been provided a reasonable opportunity to receive the COVID-19 vaccination
>
>(c) Has made a final declination of immunization as instructed in reference 1[L]
>
>(d) Does not have a pending or approved medical or administrative exemption (to include religious accommodation)

The directive states at 4.b with respect to exemptions that

> Soldiers may submit requests for medical or administrative exemption from mandatory immunization as enumerated in reference 1c. If a Soldier has a pending exemption request, and final action is taken to deny the exemption, to include any request for Appeal, the Soldier will be ordered to receive the COVID-19 vaccination and counseled regarding this directive. If the Soldier refuses the COVID-19 vaccination order, the Soldier will be subject to action listed in this directive.

Pursuant to the directive, Vance is not subject to adverse action since his appeal remains pending and he has not made a final declination of immunization. While at some point the proverbial rubber may meet the road, it has not done so yet. Vance's initial refusal of the COVID-19 vaccination was one step in the process through which he has been afforded the opportunity to exercise his First Amendment right by asserting a religious conviction against vaccination.

Vance has stayed the course despite the Army's initial denial and has appealed his request for a religious accommodation. There has been no final decision on the exemption request. There have recently been a number of approvals by the Army of such requests. There has been no final declination by Vance. Vance does not presently meet the definition of "Soldier

refusing the vaccination order" and thus he is not subject to the action listed in AD 2022-02. As such, Vance's religious exercise is not being substantially burdened by the government in violation of RFRA nor is his First Amendment right to the free exercise of his religion being impinged by any action of the Army.

The landscape has changed as the Army processes a multitude of requests for religious accommodation and many subsequent appeals. As the record now stands, Vance's claims for violation of RFRA and the Free Exercise Clause are at best premature and at worst moot. The dire consequence that Vance anticipates is neither imminent nor certain. Vance's request for accommodation may be granted or his request may be mooted by a decision rendered in the IDES process. Vance's military future is uncertain not only with respect to the unresolved appeal of the initial denial of his exemption request but also due to other current independent factors which may entirely moot his request. Any potential harm from an order for vaccination or disciplinary action arising from a final declination by Vance rests "upon contingent future events that may not occur as anticipated or, indeed, may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998)(citation omitted).

Additionally, the Court has an incomplete factual record and thus could not provide a fair adjudication of the merits of the parties' positions. The action was filed when Vance appealed, proceeding on the assumption that his appeal would be denied and separation proceedings would begin. At the time, no religious exemptions had been approved by the Army and Vance was not undergoing IDES examination. The Army remanded the request for review by Vance's current command. The situation remains fluid and the Court has not seen the outcome of any of these developments. The development of a factual record by that Army and its interpretation of the

law as applied to these particular facts is crucial. *See Seepe v. Dep't of the* Navy, 518 F.2d 760 (6th Cir. 1975). The incomplete record in the case weighs against a finding of ripeness.

Finally, dismissal of the action will work no hardship on Vance at this stage. He has declined vaccination and is thus standing on his religious conviction. No separation proceedings have been implemented nor are they imminent as his appeal and the IDES process are pending, so he is not, at present, being put to any further choice in the matter. His present inability to PCS is a function of multiple circumstances some of which fall outside this litigation. To attempt to predict the outcome of the dual processes at work would be sheer speculation. There are no ramifications of dismissal of this action which give the court pause.

C. Conclusion

Based upon the foregoing, the Court finds that the claims are not ripe and therefore subject matter jurisdiction is lacking. The Army's motion will therefore be granted and the action will be dismissed without prejudice by separate order.

**IT IS SO ORDERED.**

April 12, 2022

Charles R. Simpson III, Senior Judge
United States District Court